IN RE ESTATE OF LANGENBACH : STRATMAN ET AL., ADMRS., APPELLANTS, *v.* FIRST NATL. BANK OF CANTON, APPELLEE.

(No. 1947—Decided February 24, 1941.)

*Mr. Urban A. Wernet,* for appellants.
*Messrs. Lynch, Day, Pontius & Lynch,* for appellee.

SHERICK, J.   This is an appeal to this court from an order of the Probate Court which allowed certain

attorney fees of which more will be hereinafter said. The notice of appeal recites that it is upon law and fact. The matter was heard below upon stipulated facts which are here offered in lieu of a bill of exceptions. Appellants, Edward F. Stratman and Urban A. Wernet, administrators *de bonis non* of the estate of William S. Langenbach, have filed specifications of error, and both parties treat the appeal as one at law. We shall so consider it. The pertinent facts are as follows.

William S. Langenbach, hereinafter referred to as decedent, died intestate in May 1934. His brother, Edward A. Langenbach, hereinafter called administrator, was appointed administrator of his estate. In September of the same year the administrator died testate, and appellee, First National Bank of Canton, hereinafter referred to as the bank, qualified as his executor. Decedent's estate not having been fully administered, the bank, on December 31, 1934, filed its final account for the administrator, wherein it took credit for administration fees and payment of attorney fees to its counsel. Thereafter on January 9, 1935, appellants, with the approval of decedent's surviving brother and sister, who, with the deceased administrator, were the three heirs at law of the decedent, filed two applications in the Probate Court. They first asked that they be appointed administrators *de bonis non* of decedent's estate. The second application, in contemplation of Section 10506-23, General Code, asked that a depository for securities be named in order that the bond required might be kept as low as possible. The reason for this request is in that decedent's estate possessed a half-million dollars of personalty, most of which was in bonds, stocks and securities.

On January 15, next, a hearing was had, and the court authorized the deposit of estate securities with The First Trust & Savings Bank of Canton, and fixed

the bond to be given at $100,000. On the succeeding day appellants tendered a surety bond in this sum which was approved and they were then appointed administrators *de bonis non*. Ten days thereafter, the bank, as executor of the administrator, filed a motion to vacate the court's order designating a depository. The reasons assigned are lack of notice to the bank; that at the time made no administrator *de bonis non* had been appointed; and that there is no authority for turning over securities to a depository but that they must be delivered to an administrator *de bonis non*. This motion, for good cause shown, was sustained on March 5th, and an additional bond of $900,000 was required, which appellants promptly furnished.

On June 1, 1935, the bank as executor of the will of Edward A. Langenbach, who was the administrator of decedent's estate, filed a motion for a refund of certain moneys, to wit, $409.85 for attorney fees and court costs incident to and growing out of the proceedings which vacated the depository order made in lieu of bond. On June 13, appellants filed a counter motion to dismiss appellee's motion. After an interim of five years, on November 27, 1940, to be exact, appellant's motion was denied, the bank's motion was sustained and appellants were ordered to pay the $400 attorney fees with interest from March 5, 1935, the date of vacation of the depository order, and the costs taxed at $9.85. It is from this order that appellants appeal.

They urge upon us that when the bank became the executor of the administrator's will it had two things to do in respect to decedent's estate, and only two, that is, to file a final account and to pay over to the successor administrators *de bonis non* all the assets of the decedent's estate then remaining in its hands. Appellants also contend that the bank had no statutory right

or authority, as executor, with the responsibility of accounting to decedent's administrators *de bonis non*, to interplead in the administration of decedent's estate other than as and for its testator's benefit, that is to say, as an heir at law of the decedent; and that when it questioned the court's designation of a depository it did so as the representative of an heir at law and not in the capacity of a representative of decedent's estate. Appellants maintain that the fiduciary of a deceased fiduciary has no legal right to create any debt or claim against the first estate, and if any such are brought into existence they should be presented to the successor representative and acted upon as are other claims. They therefore assert that the claim is the debt of the estate of the administrator and not of decedent's estate.

On the other hand, the bank takes the position that it has performed its duty and thereby required extraordinary services in the administration of decedent's estate, and under Section 10509-193, General Code, it is entitled to an allowance for legal services, ordinarily "not required of an executor or administrator in the common course of his duty," which confers a benefit upon the earlier estate. The bank further says that the matter of vacation of the court's depository order was not excepted to or appealed from and cannot now be gone into. It is stated that had appellants followed the proper statutory procedure in obtaining their appointment, then the claim for services would never have arisen. The bank puts it another way. It says "the propriety of the action was justified by its outcome."

It cannot be questioned but that a Court of Probate at all times, upon application or of its own motion, may regulate the sufficiency of an estate bond. What it may approve of today it may disapprove of tomorrow.

That court's first duty lies in the preservation of estates, and to that end its discretion in bond requirements is ordinarily wide and unfettered. We make these observations in view of the bank's claim of finality, to which we cannot subscribe. It is not a final order from which an appeal may be prosecuted. It is equally inconceivable that an applicant for appointment for an administratorship should except to the court's bond requirement order. If he did so, surely appointment would not follow. It just is not done. In this instance the claim for legal services is predicated solely upon work done after the filing of the final account. If the bank had no right as a representative of the administrator's estate to intervene in the appointment of an administrator *de bonis non,* then it must and does follow that the bank's claim should have been disallowed, for the claim is wholly dependent on the propriety of the bank's first appearance.

It is our notion that the bank had no such right in the capacity now claimed. No such right is conferred by statute. It is not the privilege of a retiring fiduciary to question the qualification and dictate the propriety of his successor's appointment by the course pursued. We are of opinion that the bank possessed a right to question the court's act in its appointment, bond requirement and creation of a depository, but not in the manner followed. Its final account having been filed, it had but one duty to perform, that was to see to it that it turned over the estate assets to the one entitled to receive them. If the matters of which it complained were irregular and illegal its proper course as the representative of the administrator's estate was to withhold the funds until matters were set aright. By this means it would have benefited the estate and protected itself and its final duty would have been performed. We conclude that the bank has misconceived

its remedy. The fact that it had a duty to perform cannot ripen into a right to maintain a proceeding to that end. Its part to be played in such a case was passive resistance and not an attack. If it chose to appear therein it could only do so as the legal representative of the heir at law, whose will it was administering; and what it did was for the benefit of its trust and not that of the prior estate. Its act procured the undoing of that which has since been done again, that is, the re-creation of the same depository; all of which has cost the decedent's estate several thousand dollars in bond premiums which perhaps might have been saved.

To say that "the propriety of the action was justified by its outcome" is to re-write the phrase that "the end justifies the means." If this saying implies justifiable excuse, then the present dictators have done no wrong. In law it is a confession of weakness rather than an assertion of strength.

In view of the reasons assigned in the bank's motion to vacate the depository and bond order, we feel that something should be said concerning Section 10506-23, General Code. We first quote its provisions:

"In any case where a bond is or shall be required by Probate Court from a fiduciary, and the value of the estate or fund is so great that the Probate Court deems it inexpedient to require security in the full amount prescribed by law, the said Probate Court may direct that any certificates of stock, bonds, notes, or other securities belonging to the estate or fund be deposited with a savings bank, national bank or trust company, duly incorporated under the laws of this state, or of the United States, as may be designated by order of the Probate Court."

This section is of comparatively recent origin. It clearly applies in cases where a bond "shall be re-

quired.'' It reposes discretion in the Probate Court. We can conceive of no more proper way to invoke its provisions than the appellants did in the present instance. They prepared and filed at the same time two related applications. It was necessary that the application grounded on this section should first be passed upon. Otherwise, it could not be known just what the bond requirement would be. We recognize that bonds are quickly procured but not instantaneously. The administrators could not be appointed until bond was given in the sum required and the other provisions of the order and Sections 10506-24 and 10506-25, General Code, were complied with. This section does not require that a bond be first given in double the value of the personal estate. To so require might defeat its very purpose. The law now encourages quick settlement of estates. Many are settled within nine months as the statutes direct. The section clearly creates an exception to the general rule for the very definite purpose of saving the estate from heavy bond charges. We see no unsurmountable difficulty in the matter of turning securities over to a depository. Receipts may be signed by both the depository and the fiduciary. One armed with this dual acknowledgement of payment and a certified copy of the court's order creating the depository should have a sufficient shield against a second demand.

It is the judgment of this court that the Probate Court erred in the allowance of the bank's claim. Its judgment is reversed and costs thereon made are taxed against the bank.

*Judgment reversed.*

LEMERT, P. J., and MONTGOMERY, J., concur.